UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

SHANNEL HEAD and GEORGE HEAD,

Plaintiffs,

v.

WHITE PINE COUNTY, *et. al*.,

Defendants.

Case No. 3:24-cv-00036-MMD-CLB

ORDER

## I. SUMMARY

Plaintiffs Shannel Head and George Head bring this action against Defendant White Pine County[1] for alleged discrimination and retaliation during their employment with White Pine County Sheriff's Office. (ECF No. 1.) The Complaint asserts four claims in violation of federal and state laws: sex discrimination, disability discrimination, and retaliation as related to sex and disability. (*Id.* at 12-16.) Defendant moves for summary judgment as to all four claims. (ECF No. 60 ("Motion").)[2] Plaintiffs do not oppose summary

[1]The Complaint named Sheriff of White Pine County and two individual Defendants, Jamie Swetich and Rick Ashby. (ECF No. 1.) These Defendants have been dismissed. (ECF Nos. 29, 50.)

[2]Plaintiffs responded (ECF No. 63) and Defendant replied (ECF No. 64). Defendant also filed a motion to seal (ECF No. 59) excerpts of Defendant's 30(b)(6) deposition testimony (ECF No. 59-1 ("Exhibit A")). (ECF No. 59.) Defendant seeks to seal Exhibit A because it had been designated as confidential under the stipulated protective order, pending a determination by the Court. (*Id.* at 2-3.) Exhibit A does not contain any confidential information that warrants a finding of compelling reason to support sealing. *See Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (to overcome the strong presumption in favor of public access, the party seeking to seal must make particularized showings as to why the filing should be sealed and provide compelling reasons, supported by specific factual findings, for the request). While the testimony references a criminal investigation as to allegations against Ashby, the parties' briefs assert that Ashby pled nolo contendere to charges relating to sexual assault and was sentenced to two years. (ECF Nos. 60 at 4, 6; 63 at 7-8.) So the fact of Ashby's criminal conduct is a matter of public record. Accordingly, the Court denies Defendant's motion to seal (ECF No. 59) and will direct that both the motion to seal and the sealed exhibit be unsealed.

judgment as to the disability related claims, but they do oppose summary judgment as to the sex discrimination and retaliation claims. (ECF No. 63 at 5.) Based on Plaintiffs' concession, the Court grants summary judgment as to the disability related claims (third and fourth causes of action). As to the remaining claims, the Court denies the Motion as to Shannel but grants the Motion as to George.

## II. BACKGROUND

The following facts, adapted primarily from the Complaint and the Motion, are relevant to the remaining sex discrimination and retaliation claims. These facts are undisputed unless otherwise noted.[3]

Plaintiffs, who are spouses, came to work for White Pine County Sheriff's Office at different times. (ECF No. 1 at 2.) George Head ("George") was employed as a deputy sheriff from June 18, 2018 to June 20, 2023.[4] (ECF Nos. 60 at 7, 10; 60-15 at 2.) Shannel Head ("Shannel") was employed as a dispatcher from July 16, 2018 to February 12, 2023. (ECF Nos. 60 at 10; 60-14 at 2[5].) Plaintiffs separately submitted resignation letters. (ECF Nos. 60-14 at 2; 60-15 at 2.) The parties dispute whether Plaintiffs voluntarily resigned or whether they were compelled to resign.[6]

---

[3]In fact, Plaintiffs frequently cite to Defendant's Motion as support for their statement of facts.

[4]The Complaint alleges that George's claims arise out of his employment "from approximately June 2021 until on or about June 20, 2023." (ECF No. 1 at 2.)

[5]The resignation notice is dated January 20, 2022 but the notice identified the last day of employment as "Sunday, February 12th 2023." (ECF No. 60-14 at 2.) The Complaint alleges Shannel's employment was terminated on February 12, 2023. (ECF No. 1 at 2.) In response to the Motion, Plaintiffs referenced Shannel's resignation date as January 20, 2022. (ECF No. 63 at 5.) Defendant also asserts Shannel resigned on January 20, 2022, citing to her resignation notice filed as ECF No. 60-14, but in the next paragraph on the same page Defendant states that Shannel resigned effective February 12, 2023, citing to the same notice. (ECF No. 60 at 10.) It appears likely that the reference to 2022 was made in error and that Shannel's termination occurred in 2023. Regardless, the error in employment dates for both Plaintiffs does not affect the Court's analysis of Defendant's Motion.

[6]Defendant offered the resignation letters as support for its contention that Plaintiffs resigned from their employment after giving notice. (ECF No. 60 at 10, 17, 23.) Plaintiffs allege they were "forced to resign." (ECF No. 1 at 11.)

Plaintiffs' claims are grounded on the alleged conduct of the two individuals who directed conduct against Shannel: Ashby, who was a Detective Sergeant; and Swetich, who was Captain of the Sheriff's Office. (ECF No. 1 at 3.) Swetich testified that Shannel reported to him when he became the supervisor over dispatch "not too long before [Swetich] retired" though he does not recall whether that was in 2021 or 2022.[7] (ECF No. 63-3 at 9-10.) Defendant asserts that "Ashby recently pled nolo contendere to charges relating to sexual assault of a minor several years earlier, as well as him touching [Shannel's] blouse and pulling it back."[8] (ECF No. 60 at 4.)

In sum, the Complaint alleges that Ashby engaged in the following conduct against Shannel based on her gender: Ashby "often touched [Shannel] in an overtly sexual manner at work," citing as an example, Ashby "often insisted on hugging" her and while doing so, would continue to hold her while he "caressed her back, hips, buttocks and moaning"; Ashby would make "overtly sexual comments at work about [Shannel's] appearance" and would "often softly moan[]: 'mmmm"; and on one occasion when Ashby stopped by her desk, he noted that her "blouse had accidentally unfastened, [and] brazenly reached across her desk and further unfastened her blouse."[9] (ECF No. 1 at 6.) As to Swetich, the Complaint alleges that Swetich "often made overtly sexual comments at work about [Shannel's] appearance, he "cracked sexual jokes, shared intimate details of his personal life, and made overt sexual advances towards" her; he told her at least once that "he planned to 'fuck' her; at a social event in August 2021, Swetich "grabbed [Shannel] and kissed her." (*Id.* at 7.) In addition, George testified to witnessing one

---

[7]Plaintiffs cite to this same deposition testimony to support their assertion that Shannel reported to Swetich. (ECF No. 63 at 5-6.) Plaintiffs also cite to Swetich's deposition to support the assertion that George reported to Swetich and worked under Ashby's supervision, but the cited transcript page does not support this assertion. (*Id.* at 6, citing ECF No. 63-3 at 5.)

[8]The parties do not present a clear timeline of some of the events referenced in their brief, including when the allegations supporting the claims allegedly occurred and when Ashby's employment with Defendant ended and when he was convicted.

[9]Defendant's Motion cites to Shannel's testimony that this incident occurred in 2019. (ECF No. 60 at 9.)

incident where Swetich harassed Shannel. According to George, sometime in January 2022, he heard Swetich tell Shannon "you guys need to fuck already and get it over it" in response to issues between Shannel and another dispatcher, Sami Blackham. (ECF No. 63-4 at 7.)

As noted, the remaining claims are sex discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 1981, 2000e, *et seq.* ("Title VII") and NRS § 613.330 (first cause of action) and retaliation in violation of Title VII and NRS § 613.340 (second cause of action). (ECF No. 1 at 12-14.) As to the retaliation claim, Plaintiffs allege that Shannel refused Swetich and Ashby's sexual advances and complained about the "pervasive predatory culture" in the Sheriff's Office, and that Defendants (presumably including the individual Defendants who have been dismissed) retaliated against Shannel. (ECF No. 1 at 13-14.) However, these remaining claims are alleged by each Plaintiff against Defendant.

## III. DISCUSSION

Defendant seeks summary judgment as to both Plaintiffs. Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). All justifiable inferences should be drawn in the non-movant's favor. *Id.* at 255.

The Court will address Plaintiffs' sex discrimination claim first before turning to their retaliation claim as to each Plaintiff. Because Nevada's anti-discrimination and anti-retaliation statutes are almost identical to their federal counterparts, the Court analyzes them under the same framework. *See Liston v. Las Vegas Metro. Police Dep't*, 908 P.2d

720, 721 n.2 (Nev. 1995) ("The action was brought pursuant to NRS 613.330, Discrimination on the Basis of Age, which is based on . . . the Age Discrimination in Employment Act (ADEA)."); *Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("we have previously looked to the federal courts for guidance in discrimination cases.").

**A. Sex Discrimination via Hostile Work Environment**

"An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that [s]he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Arizona ex rel. Horne v. Geo Grp., Inc.*, 816 F.3d 1189, 1206 (9th Cir. 2016) (citations omitted). "In evaluating motions for summary judgment in the context of employment discrimination, [the United States Court of Appeals for the Ninth Circuit has] emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004). "The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." *Id.* at 1113.

**1. Shannel Head**

Defendant assumes for the purpose of its Motion that Shannel's allegations satisfy the first two elements—that the conduct was harassing in nature and that it was unwelcome—but argues that Ashby and Swetich's conduct is not sufficiently severe or pervasive to establish a claim of hostile work environment based on gender. (ECF No. 60 at 20.) Shannel counters that their "physically invasive and constant verbal conduct" was severe and pervasive. (ECF No. 63 at 15.)

Viewing the facts in the light most favorable to Shannel as the non-moving party and drawing all reasonable inferences in her favor[10], the Court finds that a rational trier of fact could find Ashby and Swetich's conduct to be severe and pervasive as to create a sexually abusive work environment.[11] The conduct involved not just isolated verbal sexual comments, but inappropriate touching involving Ashby unfastening Shannel's blouse while she was at her desk and caressing her on frequent occasions when he hugged her, and Swetich "grabbed and kissed" Shannel at a social event. *See* discussion *supra.* In contrast, the cases that Defendant relies on to argue the conduct here was not severe or pervasive involved allegations of verbal conduct, and not verbal conduct accompanied by inappropriate touching incidents. (ECF No. 60 at 20-21 (discussing cases involving allegations of inappropriate unwelcome comments).)[12] Defendant's Motion cites to Shannel's testimony about the culture at the Sheriff's Office where "people hug and kiss

---

[10]*See Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) (in considering summary judgment, a court views all facts and draws all inferences in the light most favorable to the nonmoving party).

[11]As discussed, Defendant assumes the conduct alleged in Complaint occurred for purpose of its Motion. In response, Plaintiffs rely primarily on allegations in the Complaint that Defendant cites to in their Motion and on the declaration of Vanessa Leavitt (ECF No. 63-9) as support for the alleged sexual harassment of Shannel. (ECF No. 63 at 6.) Leavitt has filed her own case against Defendant. *See Leavitt v. White Pine County,* Case No. 3:24-cv-00445-MMD-CLB. Here, Defendant argues that the Court should not consider Leavitt's declaration because testimony about Leavitt's case involves her alleged experience and is hearsay. (ECF No. 64 at 6.) While Leavitt's declaration asserts alleged harassing conduct directed her, she does state, though in conclusory terms, that "[t]he offending male employees made heinous verbal sexual comments directed at me and my female coworkers, including Shannel Head." (ECF No. 63-9 at 3.) The Court need not resolve Defendant's objection as to the Leavitt declaration because the Court concludes that even without Leavitt's testimony, a rational trier of fact could find Ashby and Swetich's conduct against Shannel to be severe and pervasive.

[12]For example, Defendant cites to *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104 (9th Cir. 2000). In *Kortan*, the Ninth Circuit found that harassment was not severe or pervasive when the plaintiff's supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea." *Id.* at 1109-11. *Manatt v. Bank of America, N.A.,* 339 F.3d 792, 795 (9th Cir. 2003) involved allegations of racial comments, including plaintiff's coworkers saying "China Man" and pulling their eyes back with their fingers to mock the appearance of Asians. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642-43 (9th Cir. 2003) involved allegations that a supervisor made statement that the plaintiff had "a typical Hispanic macho attitude" and that he should consider transferring to the field because "Hispanics do good in the field."

each other" and contends that Shannel and Swetich were "close friends, and she was not afraid of him." (ECF No. 60 at 11.) But Defendant's argument cuts against its admission that the conduct was harassing and unwelcome for purposes of its Motion. (ECF No. 60 at 20.) To the extent Defendant argues that this added context shows the conduct was not severe or pervasive, drawing all reasonable inferences in Shannel's favor, a rational trier of fact could reasonably disagree. Accordingly, the Court finds that a rational juror could find the conduct at issue here satisfies the severe and pervasive element, precluding summary judgment in Defendant's favor.

Defendant also argues that even if Shannel can establish a hostile work environment sexual harassment claim, it is entitled to the *Faragher* and *Ellerth* defense because it took corrective action against Ashby, and Shannel did not report Swetish's conduct to the Sheriff's Office. (ECF Nos. 60 at 16, 22; 64 at 8-10.) Plaintiffs do not dispute that the Sheriff's Office has a policy prohibiting discrimination and harassment but they argue that the defense is not available under the circumstances here. (ECF No. 63 at 6, 21-24.)

*Faragher/Ellerth* refers to a pair of Supreme Court cases read together to establish an affirmative defense available to employers under Title VII "when the employee has been unlawfully harassed, but there has been no 'tangible employment action[;]' [then] the employer may avoid liability by proving the defense of 'reasonable care.'" *Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003). "To prevail on the affirmative defense of 'reasonable care,' an employer must prove '(a) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by it or to avoid harm otherwise.'" *Id.* at 1177 (citation modified). The Court generally agrees with Shannel that a genuine issue of material fact as to the first factor precludes summary judgment.[13]

[13]For this reason, the Court need not address Defendant's argument as to the second factor.

In support of the first factor, Defendant argues that Ashby was put on paid administrative leave and did not return to work after Sheriff Scott Henriod learned of allegations against Ashby made by others, namely Vanessa Leavitt. (ECF Nos. 60 at 22; 59-1 at 11-13.) Defendant's cited deposition testimony of Sheriff Henriod does not provide a clear timeline other than the investigation would have been in 2023. (ECF No. 59-1 at 7.) He testified that after he learned of Leavitt's complaint that Ashby had committed an unwanted sexual act, he initiated a criminal investigation as well as an internal investigation. (*Id.* at 11-18.) As part of that investigation, he learned from Shannel that Ashby had directed conduct towards her. (*Id.* at 17-18.) Moreover, Defendant argues that Shannel did not report Ashby or Swetich's conduct to Sheriff Henriod in accordance with the Sheriff's Office's discrimination policy.

However, as Plaintiffs point out in their response, they have offered evidence to create a genuine issue of fact that Defendant failed to promptly take corrective action. (ECF No. 63 at 23-24.) Plaintiffs cite to Leavitt's declaration where she asserted that inappropriate sexual conduct was directed at her and other employees and "[t]he entire leadership of the department was aware of the sexual harassment, but they just kept their heads down." (ECF No. 63-9 at 2.) While the Court does not consider Leavitt's declaration in addressing the alleged harassing conduct directed at Shannel, Leavitt's declaration describes her observation of the office environment and is relevant to Defendant's affirmative defense. Moreover, Defendant relies on how the Sheriff's Office responded to Leavitt's complaint of sexual harassment by Ashby, rendering her testimony about the Sheriff's Office's handling of harassment complaints relevant. In particular, Defendant cites to Sheriff Henriod's testimony about how he handled Leavitt's complaint as to Ashby's sexual conduct. Notably, Sheriff Henriod testified that he learned of the complaint not from Leavitt, who was his administrative assistant at the time, but from the then District Attorney, because Leavitt had disclosed the incident to the District Attorney. (ECF No. 59-1 at 11.) Moreover, as Plaintiffs point out, Swetich was Shannel's supervisor and one of the individuals who she alleges engaged in sexually harassing conduct in violation of

the Sheriff Office's policy. (ECF No. 63 at 7.) Viewing this evidence in the light most favorable to Shannel as the non-moving party and drawing all reasonable inferences in her favor, a rational trier of fact could find that Defendant failed to exercise reasonable care to prevent and promptly correct any sexually harassing conduct. Accordingly, the Court denies summary judgment as to Defendant's affirmative defense.

**2. George Head**

Defendant argues that George does not offer evidence that he was subjected to discrimination because of his sex and to the extent his claim is premised on his witnessing harassment of his wife based on her gender, he lacks standing to assert a claim of sex discrimination based on conduct directed at his wife. (ECF No. 60 at 15.) George counters that his claim of sex discrimination is "based on his direct suffering" arising "from a workplace that became hostile to him personally through pervasive sex-based harassment directed at his wife and multiple other female coworkers."[14] (ECF No. 63 at 18.) The Court agrees with Defendant that George lacks standing to bring a claim for sex discrimination or harassment based on conduct directed at his wife and other women because of their gender. *See Patee v. Pacific Northwest Bell Telephone Co.*, 803 F.2d 476 (9th Cir. 1986) (affirming dismissal of a group of male plaintiffs' claim of sex discrimination, claiming failure to provide compensation received by men doing the same work amounted to discrimination against female employees, because the male plaintiffs are not alleging discrimination against them based on their gender).

To bring a claim for discrimination under Title VII, "the plaintiff must be 'a person claiming to be aggrieved....'" under the statute. *Id.* at 477 (citation omitted). Here, George's injury does not arise from treatment of him because of his gender, but from treatment of his wife and other female employees because of their gender. Thus, George

[14]The first cause of action alleges a claim for discrimination and/or harassment against both Plaintiffs "because of sex." (ECF No. 1 at 12.) George now appears to clarify that he is not alleging discrimination against him based on his male gender. Indeed, as Defendant points out, George offers no such evidence. (ECF No. 60 at 15.)

is not within the class of person "aggrieved" under Title VII. The Court grants Defendant's Motion as to George's first cause of action.

**B. Retaliation**

To establish a prima facie case of Title VII retaliation, a plaintiff must adequately allege that: "(1) she engaged in an activity protected under Title VII; (2) her employer subjected her to adverse employment action; [and] (3) there was a causal link between the protected activity and the employer's action." *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024) (citation omitted). A plaintiff engages in a protected activity when she opposes a practice made unlawful by Title VII or participates in any manner of investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a). The Ninth Circuit Court of Appeals "set[s] the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship . . .." *Poland v. Chertoff*, 494 F.3d 1174, 1184 (9th Cir. 2007). "[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Id.*

**1. Shannel Head**

Defendant argues that Shannel fails to report the alleged harassment, and her voluntary resignation cannot support a constructive discharge to show the second element of her prima facie case. (ECF No. 60 at 24.) Shannel counters that the combination of harassment, including physical conduct, created such intolerable working conditions that she was forced to resign. (ECF No. 63 at 27.) The same evidence of alleged sexual harassment of Shannel, viewed in the light most favorable to her as the non-moving party, could lead a rational trier of fact to find the work environment was sufficiently intolerable to overcome normal motivation to remain on the job. Accordingly, there are issues of material fact as to whether Shannel was constructively discharged

and therefore can show that she suffered an adverse employment action. The Court thus denies summary judgment on Shannel's second cause of action for retaliation.

**2. George Head**

Defendant similarly argues that George cannot show he was constructively discharged to meet the second element of his retaliation claim. (ECF No. 60 at 17.) George responds that he was constructively discharged because of intolerable working conditions, mainly harassment of his wife and being denied mental health support after trauma from an officer-involved shooting ("OIS").[15] (ECF No. 63 at 28.) George was involved in an OIS on August 21, 2021 that led to the death of a suspect. (*Id.* at 9.) It is undisputed that George obtained mental health clearance in accordance with the Sheriff Office's policy before returning to full duty on September 10, 2021. (*Id.*; ECF No. 63-5 at 5.) George attended one follow-up session, but he found the counselor to be inadequate so he requested an alternative treatment provider. (ECF No. 63 at 9.) According to George, Defendant gave him a list of alternative counselors, he raised concerns about these providers and Defendant "failed to provide meaningful assistance in obtaining adequate mental health treatment." (*Id.*)

Even accepting these allegations as true and drawing all reasonable inferences in George's favor, the Court finds the denial of mental health support, even coupled with alleged harassment of Shannel, does not give rise to the kind of intolerable working conditions sufficient to overcome the normal motivation to remain on the job to earn a living. Here, George resigned in June 2023, at least six months after Shannel's

[15]In their response to the Motion, George asserts Defendant's "indifference to Deputy Head's safety complaints was part of a broader pattern of ongoing serious workplace concerns." (ECF No. 63 at 10.) As support, George asserts that he had "complained about dangerous malfunctioning radio equipment that had contributed to the circumstances of the officer-involved shooting." (*Id.*) George cites to Defendant's Motion referencing that Sheriff Henriod admitted that "radio problems had been a 'decades' long issue at the Sheriff's Office." (*Id.*) As Defendant points out in its reply, the connection between any issues with radio equipment and George's retaliation claim is not clear. (ECF No. 64 at 4.) While malfunctioning radio equipment may pose a concern to officers' safety when communications are vital, George does not allege that this issue affected only him so as to contribute to an actionable intolerable working environment for him.

resignation and almost two years after the OIS incident. The passage of time creates a tenuous connection between the events that George alleges constitute intolerable working conditions and his resignation. Accordingly, the Court grants Defendant's Motion as to George's second cause of action for retaliation.

## IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant's motion for summary judgment (ECF No. 60) is granted as to George Head's first and second causes of action but is denied as to Shannel Head's first and second causes of action. Additionally, the Court grants summary judgment as to Plaintiffs' disability related claims alleged in the third and fourth causes of action.

It is further ordered that Defendant's motion to seal (ECF No. 59) is denied. The Court directs both the motion to seal (ECF No. 59) and the exhibit attached to the motion (ECF No. 59-1) to be unsealed.

The Court refers Shannel's remaining two claims to the Magistrate Judge to conduct a settlement conference. The proposed joint pretrial order will be due within 30 days from the settlement conference assuming settlement is not effectuated.

DATED THIS 17th Day of August 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE